# BLACK ET AL. *v.* CUTTER LABORATORIES.

No. 92.  Argued April 26, 1956.—Decided June 4, 1956.

*Joseph Forer* argued the cause for petitioners. On the brief were *Bertram Edises, A. L. Wirin* and *Abraham Glasser.*

*Gardiner Johnson* and *Thomas E. Stanton, Jr.* argued the cause and filed a brief for respondent.

Briefs of *amici curiae* urging reversal were filed by *Edward J. Ennis* for the American Civil Liberties Union, and *Charles R. Garry* for the National Lawyers Guild, San Francisco Chapter.

*Lambert H. Miller* filed a brief for the National Association of Manufacturers of the United States, as *amicus curiae,* urging affirmance.

MR. JUSTICE CLARK delivered the opinion of the Court.

In 1949 Mrs. Doris Walker was discharged from her job at Cutter Laboratories, a manufacturer of pharmaceutical and biological products, on the claimed grounds that she was an active member of the Communist Party and had falsified her application for employment there.[1]

---

[1] At the time of discharge a written notice was read to Mrs. Walker by a company official in the presence of another company official, an assistant shop steward of the union and a company stenographer. The notice read as follows:

"Mrs. Walker:

"As you are aware, the company has known for some time that when you applied for work with Cutter Laboratories on October 4, 1946, you made a number of false representations on your 'Application for Employment.'

"As we know now, you falsified the statement of your education so as to conceal the fact that you had completed a law school course at the University of California's School of Jurisprudence at Berkeley in May, 1942. You concealed the facts that you received the degree of Bachelor of Laws in May, 1942, and that you were admitted to the State Bar of California on December 8, 1942. You concealed that since that date you have at all times been admitted and entitled to practice as an attorney before all of the Courts of California.

"We know now that by falsification of the name of a previous

Petitioner, Bio-Lab Union of Local 225, United Office & Professional Workers of America, sought reinstatement for Mrs. Walker before an Arbitration Board pursuant to a valid collective-bargaining agreement which author-

employer, you concealed the fact that from June, 1942 to February, 1944 you were employed by the Federal Government's Office of Price Administration, including employment as an Enforcement Attorney at a salary of about $3,200.00 a year.

"We know now that you deliberately concealed from us that from February 1944 to December, 1945 you were employed as an attorney by Gladstein, Grossman, Sawyer and Edises, a well-known firm of lawyers specializing in labor cases.

"You know that a few weeks ago the 'Labor Herald,' the official CIO newspaper, stated that the National Labor Relations Board had sustained a cannery firm that had discharged you for refusing to answer whether or not you were a Communist.

"We have checked the records. We know now that you deliberately concealed that in 1946, just before you applied for work here, you were employed by a series of canneries and had been discharged by them.

"Ordinarily, an employee of the Company would be discharged immediately for falsifying material facts on an 'Application for Employment.' Because you were an officer of the Union we kept you on the pay roll rather than open ourselves to a charge of persecuting a union officer. We have given your case careful consideration because we know very well that no matter how strong the case against you there will be a claim of discrimination because of union activities.

"Because no employer wants to become involved in a dispute of that kind we have been patient and deliberate in our consideration of your misconduct.

"On October 1, 1948, when you testified under oath before a Trial Examiner of the National Labor Relations Board, you refused to answer the question as to whether or not you were a member of the Communist Party.

"You refused to answer under oath the question as to whether or not you were or had been a member of the Federal Workers' Branch No. 3 of the Communist Party.

"You refused to testify under oath whether or not you were or had been a member of the South Side Professional Club of the Communist Party.

"We are convinced now, that you were and still are a member of

ized discharge for "just cause" only. The Board determined that she had been discharged for union activity and, by a vote of 2 to 1, ordered her reinstatement. The Superior Court of San Francisco County confirmed the award and ordered it enforced. On appeal, the District Court of Appeal affirmed. The Supreme Court of California, however, reversed. 43 Cal. 2d 788, 278 P. 2d 905. Petitioners contend that the decision and opinion below violate constitutional principles embraced in the Equal Protection and Due Process Clauses of the Fourteenth Amendment. We granted certiorari, 350 U. S. 816.

---

the Communist Party, that you were a member of the Federal Workers' Branch No. 3 of the Communist Party, and that you were a member of the South Side Professional Club of the Communist Party.

"Our recent investigation of your past record has uncovered previously unknown conduct that goes far beyond a mere concealment of material facts. We have just completed a thorough investigation and have a full report upon your past activities. We realize now the importance of the facts that you concealed from us. We realize the full implications of your falsification and misrepresentations. A follow-up and investigation of the 'Labor Heralds' recent revelations has uncovered a situation far more grave than we expected.

"We are convinced now that for a number of years, you have been and still are a member of the Communist Party. We are convinced beyond any question that for a number of years you have participated actively in the Communist Party's activities.

"The nature of our company's business requires more than the usual precaution against sabotage and subversion. Upon a disclosure that any employee is a member of the Communist Party, or has participated in other subversive or revolutionary activity, we conceive it to be the responsibility of management to take action.

"Confronted with such a situation, any inclination to be lenient or to grant a union official special consideration is out. In the face of your record there is no alternative open to us except to terminate your services at once. Accordingly, you are notified now that you are discharged for the causes mentioned. You will be paid the full amount due to you promptly."

Before Mrs. Walker applied for a job at the Cutter plant, she had graduated from law school, worked for three years as an attorney for the Office of Price Administration and in private practice, and had been discharged for union activity from jobs in three different canneries. All of these facts, she readily admitted to the Board, were concealed or misrepresented by her in the Cutter employment application in 1946. In addition, she admitted that she had falsely stated that she had been employed as a file clerk in 1939 by one John Trippe, attorney. She told the Board that no such person or employment had existed. The character references she listed had been warned by her of the omissions and falsifications in her application and at her request they did not disclose her true background to Cutter. These falsifications and omissions were not discovered until after she had been employed as a label clerk by the Cutter plant and the "probationary period" had expired.

The Arbitration Board found that Mrs. Walker had played an active role in union activities at the Cutter plant. In 1947 she became a shop chairman and a member of the executive board of the Local. The following year she was elected chief shop steward, and her activities were extended to all manufacturing departments of the Laboratory. She became president of the Local in the spring of 1949, and was holding that office at the time of her discharge. The Board also found that Mrs. Walker was a member of the Communist Party during the period of her employment. Cutter had investigated her in 1947 and 1949 and had discovered evidence of Communist Party membership and also that she had falsified her employment application. The Board's finding of Communist Party membership was based on evidence uncovered in the Cutter investigations plus Mrs. Walker's

refusal to answer questions relating to membership and the Union's offer to stipulate that the company could reasonably have concluded that she was a Communist.[2]

The Board took the "view of the record" that Cutter honestly believed that Mrs. Walker had falsified her application and was a member of the Party. But it held that, "while an employer may have sufficient grounds for a discharge," he "should not be entitled to carry mutually known grounds for discharge in his hip pocket indefinitely for future convenient use." It found Cutter's grounds to be "stale" and concluded that Mrs. Walker was unjustly discharged and that this action of Cutter "interfered with, restrained and coerced an employee because of participation as an officer and negotiator on behalf of the Union in a wage negotiation."

The majority opinion of the Supreme Court of California contains broad statements to the effect that specific performance of the arbitration award would violate the public policy of the State. Petitioner's constitutional arguments are based on the belief that these statements establish the ground on which the judgment below was based, and that therefore the decision below not only establishes a conclusive presumption of advocacy of violence from the mere fact of membership in the Communist Party, but renders unenforceable substantially all contracts entered into by members of the Party.

This Court, however, reviews judgments, not statements in opinions. *Herb* v. *Pitcairn,* 324 U. S. 117, 125–126; *Morrison* v. *Watson,* 154 U. S. 111, 115. See also

---

[2] Since the Board was authorized to inquire into the reasons for her discharge and the questions were, as it ruled, relevant to the issue, it could draw such inferences as were warranted. In this respect the case is unlike *Slochower* v. *Board of Education,* 350 U. S. 551.

*Williams* v. *Norris,* 12 Wheat. 117, 118, 120. At times, the atmosphere in which an opinion is written may become so surcharged that unnecessarily broad statements are made. In such a case, it is our duty to look beyond the broad sweep of the language and determine for ourselves precisely the ground on which the judgment rests. This means no more than that we should not pass on federal questions discussed in the opinion where it appears that the judgment rests on adequate state grounds. *Herb* v. *Pitcairn, supra; Williams* v. *Kaiser,* 323 U. S. 471, 477.

It is significant that the Supreme Court of California did not limit itself to a discussion of the application of the California public policy. It also subjected the findings of the Arbitration Board to a scrutinizing review. Of course, the scope of review of such findings under the California Arbitration Act is a matter exclusively for the courts of that State, and is not our concern. *Allen-Bradley Local* v. *Labor Board,* 315 U. S. 740, 747.

First, the court determined that, since Mrs. Walker was a continuing member of the Communist Party, the doctrine of waiver could not be applied to this ground for discharge. The court noted that Mrs. Walker had remained a member of the Party "on an active and devoted basis even at the time of the board hearings." [3] 43 Cal. 2d, at 807, 278 P. 2d, at 916.

Second, it is clear that the individual parties might have agreed that the circumstance of Communist Party membership would constitute "just cause" under the contract, and no federal question would thereby be raised. It is implicit in the Arbitration Board's opinion that this

---

[3] While the court also spoke of its public policy in reaching this conclusion, its reasoning outlined above amply supports its conclusion.

was a reasonable construction of the contract, but since it applied a doctrine of waiver, no explicit findings on this point were made. But, as we read the opinion of the Supreme Court of California, after concluding that waiver could not be applied to the facts of this case, it decided that the "just cause" provision of the contract permitted discharge on the ground of Communist Party membership, and that Mrs. Walker was discharged on that ground. The court stated, "The contract between Cutter Laboratories and the Bio-Lab Union cannot be construed, and will not be enforced, to protect activities by a Communist on behalf of her party whether in the guise of unionism or otherwise." 43 Cal. 2d, at 809, 278 P. 2d, at 917. At another point, the court noted that "an entirely adequate ground [Party membership] for refusing to employ her (whether by original refusal to hire or by discharge) was a continuing one which was available to the employer at any time during its existence." 43 Cal. 2d, at 807, 278 P. 2d, at 916. In this connection, it might also be noted that the court below discussed the history of the clause in the contract which prohibited discrimination "because of race, color, creed, national origin, religious belief, or Union affiliation." At one time the word "political" as well as "religious belief" was included in the provision, but, by negotiation, it was deleted.

We believe that the Supreme Court of California construed the term "just cause" to embrace membership in the Communist Party, and refused to apply a doctrine of waiver. As such, the decision involves only California's construction of a local contract under local law, and therefore no substantial federal question is presented. Moreover, even if the State Court's opinion be considered ambiguous, we should choose the interpretation which does not face us with a constitutional question. See

*Stembridge* v. *Georgia,* 343 U. S. 541, 547, and cases cited. Cf. *United States* v. *Rumely,* 345 U. S. 41. It follows that the writ must be

*Dismissed.*

MR. JUSTICE REED would affirm the judgment below.

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE and MR. JUSTICE BLACK concur, dissenting.

I believe, with all deference, that the decision of the Court abuses the rule that we will not undertake to review a decision of a state court that rests on an independent state ground. No independent state ground is present in this case. Rather, it is easily demonstrated, I think, that the decision of the Supreme Court of California squarely and directly raises an important question under the First and Fourteenth Amendments.

At times we have ambiguous opinions that make us unsure of the precise grounds of the decision of the state court. In this case, however, we are left in no doubt. The arbitrators found that the employer discharged this worker because of her labor union activities, using the charge of Communism as a mere pretext. The Supreme Court of California went on no such ground. It is clear from a reading of its opinion (43 Cal. 2d 788, 278 P. 2d 905), that it approved the employer's discharge of this worker because she was a Communist. The tactics of Communists and the dangers of Communism make up a total of 11 pages of the 21-page majority opinion of the Supreme Court. Among other things, the Supreme Court of California said:

"From the array of congressional and legislative findings which have been quoted above, if not from the common knowledge of mankind, it must be accepted as conclusively established that a member of the Communist Party cannot be loyal to his private employer as against

any directive of his Communist master." 43 Cal. 2d, at 806, 278 P. 2d, at 916. It went on to hold that "acts of sabotage by Communists are reasonably to be expected at any time such acts may be directed by the party leader" (43 Cal. 2d, at 807, 278 P. 2d, at 916) and that an employer has the "right to discharge employees who upon the established facts are dedicated to be disloyal to him, to be likewise disloyal to the American labor union they may purport to serve, and who constitute a continuing risk to both the employing company and the public depending upon the company's products." 43 Cal. 2d, at 807, 278 P. 2d, at 917.

The arbitrators found that any grievance against Doris Walker was a stale one, the employer having known all her Communist activities for two years. The Superior Court upheld that finding. The District Court of Appeal ruled that the employer "sat back for two and a half years" and then used her Communist activities as an excuse for injuring the union in its lawful labor activity. 266 P. 2d 92, 100. But the Supreme Court held that she was discharged not for her "labor union activities" but for her "Communist Party activities." 43 Cal. 2d, at 808, 278 P. 2d, at 917. It said that the fact that the employer, knowing all the facts, did nothing for two years was irrelevant, since it was against the "public policy" of California to conclude that there was a waiver by the failure to discharge a Communist. 43 Cal. 2d, at 806, 278 P. 2d, at 916. It is plain, therefore, that the judgment of the Supreme Court of California sustains a discharge of this worker because she was a Communist.

The Court says that the parties to a collective-bargaining agreement may make Communist Party membership "just cause" for discharge of an employee, that discharge for that reason is merely a matter of contract between the union on the one hand and the employer on the other, and that when the contract is enforced no federal right is

infringed. I disagree with that doctrine. It is a dangerous innovation to meet the exigencies of the present case. It violates First Amendment guarantees of citizens who are workers in our industrial plants.

I can better illustrate my difficulty by a hypothetical case. A union enters into a collective-bargaining agreement with an employer that allows any employee who is a Republican to be discharged for "just cause." Employers can, of course, hire whom they choose, arranging for an all-Democratic labor force if they desire.* But the courts may not be implicated in such a discriminatory scheme. Once the courts put their imprimatur on such a contract, government, speaking through the judicial branch, acts. *Shelley* v. *Kraemer,* 334 U. S. 1; *Barrows* v. *Jackson,* 346 U. S. 249. And it is governmental action that the Constitution controls. Certainly neither a State nor the Federal Government could adopt a political test for workers in defense plants or other factories. It is elementary that freedom of political thought is protected by the Fourteenth Amendment against interference by the States (*De Jonge* v. *Oregon,* 299 U. S. 353, 364–365) and against federal regimentation by the First Amendment.

Government may not favor one political group over another. Government may not disqualify one political group from employment. And if the courts lend their support to any such discriminatory program, *Shelley* v. *Kraemer, supra,* teaches that the Government has thrown

---

*A union has no such liberty if it operates with the sanction of the State or the Federal Government behind it. It is then the agency by which governmental policy is expressed and may not make discriminations that the Government may not make. See *Steele* v. *Louisville & N. R. Co.,* 323 U. S. 192; *Tunstall* v. *Brotherhood,* 323 U. S. 210; *Railroad Trainmen* v. *Howard,* 343 U. S. 768; *Ford Motor Co.* v. *Huffman,* 345 U. S. 330, 337; *Syres* v. *Oil Workers Union,* 350 U. S. 892, reversing 223 F. 2d 739; *Railway Employes' Dept.* v. *Hanson,* 351 U. S. 225.

its weight behind an unconstitutional scheme to discriminate against citizens by reason of their political ideology. That cannot be done in America, unless we forsake our Bill of Rights.

It has hitherto been assumed that Communists, except and unless they violate laws, are entitled to the same civil rights as other citizens. In 1937, Chief Justice Hughes wrote to that effect for a unanimous Court in *De Jonge* v. *Oregon, supra.* That decision held that a State could not punish Communists for having a public meeting to discuss a matter of public concern. Chief Justice Hughes said that First Amendment rights might be abused "to incite to violence and crime." 299 U. S., at 364. But he went on to say, "The people through their legislatures may protect themselves against that abuse. But the legislative intervention can find constitutional justification only by dealing with the abuse. The rights themselves must not be curtailed. The greater the importance of safeguarding the community from incitements to the overthrow of our institutions by force and violence, the more imperative is the need to preserve inviolate the constitutional rights of free speech, free press and free assembly in order to maintain the opportunity for free political discussion, to the end that government may be responsive to the will of the people and that changes, if desired, may be obtained by peaceful means. Therein lies the security of the Republic, the very foundation of constitutional government." *Id.,* at 364–365.

Cutter Laboratories is an important pharmaceutical factory. It may need special protection. It may need to establish safeguards against sabotage and adulteration. It may need special screening of its employees. But there is not a word in the present record indicating that it needs protection against Doris Walker. She has no criminal record. She is guilty of no adulteration, no

act of sabotage. The factory in question has not been plagued with any such problem. It is only the fear that Doris Walker might at a future time engage in sabotage that is made the excuse for her discharge. I do not think we can hold consistently with our Bill of Rights that Communists can be proscribed from making a living on the assumption that wherever they work the incidence of sabotage rises or that the danger from Communist employees is too great for critical industry to bear.

The blunt truth is that Doris Walker is not discharged for misconduct but either because of her legitimate labor union activities or because of her political ideology or belief. Belief cannot be penalized consistently with the First Amendment. As Mr. Justice Roberts wrote for a unanimous Court in *Cantwell* v. *Connecticut,* 310 U. S. 296, 303–304, the First Amendment "embraces two concepts,—freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society." The Court today allows belief, not conduct, to be regulated. We sanction a flagrant violation of the First Amendment when we allow California, acting through her highest court, to sustain Mrs. Walker's discharge because of her belief.