**Beatrice LINSCOTT**

v.

**MILLERS FALLS COMPANY,** United
**Electrical, Radio & Machine Workers of
America (UE), and UE Local 274.**

**Civ. A. No. 70–467.**

United States District Court,
D. Massachusetts.

Sept. 16, 1970.

Leonard M. Fisher, Gerald R. Hegarty, Springfield, Mass., for plaintiff.

Cornelius J. Moynihan, Jr., David R. Pokross, Melvin Pierce, Peabody, Brown, Rowley & Storey, Boston, Mass., for Millers Falls Co.

Allan R. Rosenberg, Boston, Mass., for United Electrical, Radio & Machine Workers of America (UE), and UE Local 274.

## OPINION

WYZANSKI, Chief Justice.

Defendants have moved to dismiss the complaint, which makes the following allegations.

Plaintiff is a Seventh Day Adventist who as a matter of religious belief is conscientiously opposed to making any financial contribution to any labor organization. Before October 11, 1968 she was employed by defendant Millers Falls Co. February 18, 1966 the NLRB, pursuant to § 9 of the NLR Act, 29 U.S.C. § 159, certified defendant United Electrical, Radio & Machine Workers of America, of which defendant Local 274 is an affiliate, as the collective bargaining agent of Millers Falls' production employees, including plaintiff. Thereafter the defendant unions and the employer entered into a collective bargaining agreement which provided that "Employees of the Company shall, as a condition of continued employment, be members of the Union in good standing during the term of this Agreement. Good standing shall mean only the payment of initiation fees, if any, and periodic dues regularly required of members of the Union under its by-laws and constitution." Plaintiff informed defendants of her religious objection to making any financial contribution to any labor organization. October 11, 1968 her employer discharged plaintiff because of her refusal to pay dues or fees to the defendant unions.

Plaintiff alleges that her "rights of free exercise of religion, due process of law, and other rights guaranteed by the First, Fifth and Ninth Amendments of the United States Constitution, are violated" by the application of §§ 7 and 8 (a) (3) of the NLR Act, 29 U.S.C. §§ 157 and 158(a) (3), the NLRB's certification, and the quoted part of the collective bargaining contract. She seeks an injunction directing her employer to reinstate her, a declaratory judgment that her employer may not discharge her for failure to pay union dues, a declaratory judgment that as applied §§ 7 and 8(a) (3) of the NLR Act are unconstitutional, and damages.

Claiming damages in excess of $10,000, plaintiff alleges that this court has jurisdiction under 28 U.S.C. § 1331(a).

Defendants move to dismiss because the complaint fails to state a cause of action. They rely on Gray v. Gulf, Mobile & Ohio R. R. Co., 429 F.2d 1064, 1970, (5th Cir.), Wicks v. So. Pac. Co., 231 F.2d 130, (9th Cir.), and Otten v. B. & O. R. Co., 205 F.2d 58, (2nd Cir.).

The motions to dismiss must be granted.

█ It is true, as plaintiff argues, that unions which have been certified under § 9 of the NLR Act as collective bargaining agents must exercise their statutory power, as federal instrumentalities, subject to the First and Fifth Amendments and other relevant parts of the United States Constitution. Railway Employes' Dept. v. Hanson, 351 U.S. 225, 238, 76 S.Ct. 714, 100 L.Ed. 1112; see Douglas, J., dissenting, Black v. Cutter Laboratories, 351 U.S. 292, 302, 76 S. Ct. 824, 100 L.Ed. 1188 note. But that leaves for resolution the issue whether the particular exercise of the unions' statutory power here involved violates the plaintiff's rights under the First, Fifth or Ninth Amendments.

This is not a case in which the federally-empowered bargaining agent has entered into a contract which explicitly

requires an employer to dismiss an employee who does or does not belong to a particular church. Cf. International Association of Machinists v. Street, 367 U.S. 740, 765, 81 S.Ct. 1784, 6 L.Ed.2d 1141. See Cafeteria and Restaurant Workers Union Local 473, A.F.L.–C.I.O. v. McElroy, 367 U.S. 886, 898, 900, 81 S.Ct. 1743, 6 L.Ed.2d 1230. On the contrary, the contract at bar makes no reference to religion. Nor is there a covert intention to aid or hinder a religious belief. The contract merely requires an employer to dismiss an employee if he does not pay union fees and dues. The only purpose of the requirement is to supply funds to the union to compensate it for the performance of its functions as a federally-empowered agent, as contemplated by the NLR Act. The contract in effect imposes upon all of Millers Falls' production workers alike a uniform tax or forced contribution to pay for a service that, in the judgment of Congress, as expressed in section 1 of the NLR Act, 29 U.S.C. § 151, will promote the uninterrupted flow of interstate commerce. Cf. Railway Employes' Dept. v. Hanson, 351 U.S. 225, 232, 76 S.Ct. 714, 100 L.Ed. 1112; International Association of Machinists v. Street, 367 U.S. 740, 768, 81 S.Ct. 1784, 6 L.Ed.2d 1141.

Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965, is the most recent Supreme Court authority relevant to the issue whether in requiring the employer to discharge plaintiff for non-compliance with the union dues clause of the contract defendant unions used their federal statutory power in violation of the First Amendment. There the Supreme Court held that it was a violation of Sherbert's First Amendment rights for a state commission applying a state unemployment compensation act to deny her unemployment compensation benefits, to which she would otherwise have been entitled, on the ground that she would not accept Saturday work contrary to her religious belief. Mr. Justice Brennan's opinion considered, first, the question whether the disqualification for benefits imposed any burden on the free exercise of Sherbert's religion (pp. 403–406, 83 S.Ct. 1790), and, second, the question whether some compelling governmental interest enforced in the eligibility provisions of the statute justified the substantial infringement of Sherbert's First Amendment right, (pp. 406–409, 83 S.Ct. 1790). Answering the first question affirmatively and the second question negatively, the opinion concluded that Sherbert was entitled to the claimed benefits.

In effect, the Sherbert case treats every officially authorized interference with religious freedom as a *prima facie* infringement of the free exercise of religion and hence as a presumptive violation of the First Amendment, but permits the alleged infringer to justify the supposed infringement by some compelling governmental interest. Mr. Justice Brennan cites, at p. 403, 83 S.Ct. 1790, as examples of such justification the substantial threats to public safety, peace or order, involved in Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244, Jacobson v. Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643, Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645, and Cleveland v. United States, 329 U.S. 14, 67 S.Ct. 13, 91 L.Ed. 12. No doubt, he also could have cited non-discriminatory taxes levied under a constitutional power to promote a constitutionally sanctioned purpose. No one supposes that such a tax can be lawfully avoided by one who on religious grounds is opposed to the government in general, or to the particular tax (if the power to lay and collect it was conferred by the Constitution and laws), or to the purpose for which the proceeds of the tax are used (if the purpose be authorized by the Constitution). With respect to non-discriminatory taxes levied pursuant to a constitutional power, for a constitutional end, the law requires adherence to the ancient doctrine "Render, therefore, unto Caesar the things which are Caesar's; and unto God the things that are God's." Matt. 22:21.

We assume, consistently with the analysis in Sherbert v. Verner, that the choice presented to the present plaintiff either to pay the exacted union dues or to leave her employment was *prima facie* an infringement of, and a burden on, her right to the free exercise of religion. Nonetheless, there was a compelling governmental interest which justified that infringement and burden. Congress was concerned with the effect of labor disputes in disturbing the orderly flow of commerce. It sought to establish a new order of labor relations. An important aspect of that new order was the right of a union, chosen by a majority of employees in an appropriate unit as the representative of all in the unit, and the employer of those employees to agree that every employee in the unit should contribute to the costs incurred by the representative. See the opinions in the *Hanson* and *Street* cases already cited. Congress recognized that in some situations it would be a source of continual and serious interruptions of interstate commerce if there were free-riders. It was aware that to permit even a most ·sincere religious objector to escape the financial obligations of a union shop agreement might be an interference with the freedom of association, or rather of non-association, of those dues-paying employees who did not want the burden of carrying the costs of free-riders. See L. Hand, C. J., in Otten v. B. & O. R. Co., 205 F.2d 58, 61 (2nd Cir.), and Goldberg, C. J., in the last two paragraphs of Gray v. Gulf, Mobile & Ohio R.R. Co., (5th Cir.), *supra.*

In short, free-riders in situations where the majority of employees and the employer wanted a union shop was in the judgment of Congress a substantial threat to the peace and order of interstate commerce. Congress, therefore, left it open, so far as federal law was concerned, for the employer and the federally-empowered representative of the employees to make a collective bargain requiring union membership.

■ If this action by the federally-empowered union does burden or interfere with plaintiff's exercise of religion it is nonetheless as stated, 374 U.S. at p. 403, 83 S.Ct. at p. 1793 of *Sherbert*, not a violation of the First Amendment because "The conduct or actions so regulated * * * posed some substantial threat to public safety, peace or order. See, e. g., Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244; Jacobson v. Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643; Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645; Cleveland v. United States, 329 U.S. 14, 67 S.Ct. 13, 91 L.Ed. 12."

Moreover, this action is not a violation of the First Amendment because it is the equivalent of the exaction of a non-discriminatory tax levied pursuant to a power conferred by the Constitution and laws and used for a purpose authorized by the Constitution.

There is little merit to plaintiff's argument that inasmuch as, under § 14(b) of the NLR Act, 29 U.S.C. § 164(b), a federally-empowered collective bargaining agent and an employer cannot make the payment of dues a condition of membership in states which have so-called right-to-work laws, it cannot be so important that a federally-empowered collective bargaining agent and an employer should be permitted to make the payment of dues a condition of membership applicable to a religious objector. One answer leaps to mind. Congress chose to give a state the power to preclude union shop contracts within its borders, but Congress has not chosen to give religious objectors a power to preclude the application to them of union shop contracts. An even better answer may be that Congress considered that deference to local sentiment was the best way to achieve a satisfactory flow of interstate commerce, whereas a deference to minority religious groups might promote rather than allay disturbances of commerce.

■ Inasmuch as the unions in entering into the union shop contract did

not violate plaintiff's constitutional rights, *a fortiori* the employer did not violate those rights by entering into and performing the contract. Unlike the unions, an employer is not a governmental instrumentality and has not been given special governmental power. An employer does not receive from the NLR Act a power to enter into a union shop contract. § 8(a) (3) of the Act merely lifts any federal statutory ban which otherwise would outlaw such a contract. Cf. Otten v. B. & O. R. Co., 205 F.2d 58, 60 (2nd Cir.). A purely private employer has a common law freedom to dismiss at will an employee who has no contrary contract. See Adair v. United States, 208 U.S. 161, 172–173, 28 S.Ct. 277, 52 L.Ed. 436; Douglas, J., dissenting, Black v. Cutter Laboratories, 351 U.S. 292, 302, 76 S.Ct. 824, 100 L.Ed. 1188. While that freedom has been curbed by statutes such as the NLR Act and the Civil Rights Act of July 2, 1964, 78 Stat. 255, 42 U.S.C. § 2000e–1 et seq., no federal statute and no Massachusetts statute precludes defendant Millers Falls from acting pursuant to a union shop contract (which has no avowed or covert purpose to discriminate on a religious, racial, or like prohibited ground) to dismiss an employee for nonpayment of union dues. Nor does the First Amendment apply to a wholly private employer's act to terminate, pursuant to the common law, employment of one of his workers. See Otten v. B. & O. R. Co., 205 F.2d 58, 61 (2nd Cir.).

The contention that as here applied § 7 or § 8(a) (3) of the NLR Act, or the NLRB certification, or the collective bargaining contract, is in violation of the First Amendment fails for the same reasons that the contention that the conduct of the unions in the case at bar was in violation of the First Amendment failed.

For the same reasons, there is no merit to plaintiff's contentions based on the Fifth and Ninth Amendments.

Complaint dismissed with prejudice and with costs.