**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Herbert Louis BURDEAU,**
**Defendant–Appellant.**

**No. 97–30388.**

United States Court of Appeals,
Ninth Circuit.

June 25, 1999.

Before: BOOCHEVER, REINHARDT,
and GRABER, Circuit Judges.

ORDER; Concurrence by Judge
TASIMA; Dissent by Judge KOZINSKI.

### ORDER

The panel has voted to deny Appellant's Petition for Rehearing.

A *sua sponte* call for a vote on rehearing this case en banc was made by an active judge of this court. The call failed to receive a majority of the votes of the nonrecused active judges. Fed. R.App. P. 35.

The petition for rehearing is denied and the *sua sponte* en banc call is rejected.

TASHIMA, Circuit Judge, concurring in the order denying rehearing en banc, with whom BOOCHEVER, Senior Circuit Judge, joins with respect to the order denying rehearing en banc:

As the dissent from our denial of taking this case en banc notes, this is the third recent occasion on which the court has

denied (or rejected) taking a case en banc merely to "correct" statements in opinions, as opposed to their holdings or judgments. And for sound reason.

The criteria for taking a case en banc are clear and well-established—either necessity "to secure or maintain uniformity of the court's *decisions*," or to decide "a question of exceptional importance." Fed. R.App. P. 35(a)(1) and (2) (emphasis added).[1] *See, e.g., Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1478–79 (9th Cir.1987) (en banc); *United States v. Wylie*, 625 F.2d 1371, 1378 n. 10 (9th Cir. 1980); *see generally United States v. Aguon*, 851 F.2d 1158, 1172, 1176 (9th Cir.1988) (Reinhardt, J., concurring; Wallace, J., concurring and dissenting). And that is what en banc proceedings should be reserved for—to decide cases, not to edit statements in opinions. As the Supreme Court said long ago, "[t]his Court, however, reviews judgments, not statements in opinions." *Black v. Cutter Lab.*, 351 U.S. 292, 297, 76 S.Ct. 824, 100 L.Ed. 1188 (1956) (citing *Herb v. Pitcairn*, 324 U.S. 117, 125–26, 65 S.Ct. 459, 89 L.Ed. 789 (1945); *Morrison v. Watson*, 154 U.S. 111, 115, 14 S.Ct. 995, 38 L.Ed. 927 (1894); *Williams v. Norris*, 25 U.S. (12 Wheat.) 117, 118, 120, 6 L.Ed. 571 (1827)).

So should it be with hearing cases en banc. Subject to rare exceptions, unlike the comments in the *Burdeau* panel opinion, we should review the statements in three judge panel opinions only to "determine whether the [panel's] legal error resulted in an erroneous judgment. . . ."

*Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If we were to follow the dissent's suggestion, we would take en banc, for example, a case in which · a three judge panel harshly criticized a state supreme court, *see Trident Center v. Connecticut Gen. Life Ins. Co.*, 847 F.2d 564 (9th Cir.1988),[2] because it is no more our function, in a robust federal system, to tell a State what law it should adopt in its own sovereign capacity, than it is to "offer[ ] unsolicited advice to the other branches of government."

Those joining in the dissent have repeatedly voiced their opinion that opinion-editing of three judge panel opinions is a proper and almost routine function of the en banc court, even though they may have no disagreement with the judgments of those opinions. Although I am reluctant to write a separate concurrence to an order denying rehearing en banc, I write this concurrence because, in spite of the repeated expressions that the correcting of statements in opinions which do not affect the judgment is a proper en banc function, no contrary opinion has been expressed. Those repeated expressions should not go unchallenged.

The en banc court is not the Language Police. Its function is not to maintain uniformity of language or thought by three judge panels, but to maintain uniformity of *decisions*. Because the only purpose of this en banc call is to curb "meddling" by a three judge panel,[3] I concur in the court's denial of rehearing en banc in this case.

---

1. The "question" referred to in Rule 35(a)(2) is, obviously, a question that has been *decided* by a three judge panel or is to be decided by the en banc court.

2. In *Trident Center*, a three judge panel launched a broadside attack against the California Supreme Court for its version of the parol evidence rule, as adopted by that court in *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 69 Cal. Rptr. 561, 442 P.2d 641 (1968). *See* 847 F.2d at 568–70. The panel suggested that the rule was not a wise one, *id.* at 569 ("While we have our doubts about the wisdom of *Pacific*

*Gas ...."*), 570 ("It may not be a wise rule we are applying ...."), and, indeed, that "[i]t chips away at the foundation of our legal system," *id.* at 569. The panel then suggested to the California Supreme Court that "[w]hich the benefit of 20 years of hindsight, the California Supreme Court may wish to revisit the issue." *Id.* at 570. To its credit, however, the panel did not withhold issuance of the mandate so that the California Supreme Court could correct its 20–year old alleged mistake.

3. There is no suggestion that the only action by the panel of which the dissent complains, staying the mandate for 60 days, is of itself en banc worthy.

KOZINSKI, Circuit Judge, with whom Judges BRUNETTI, O'SCANNLAIN, TROTT, T.G. NELSON, KLEINFELD, SILVERMAN, and GRABER, join, dissenting:

For the third time in six months, a panel of this court has offered unsolicited advice to the other branches of government. Dissents in the two previous cases pointed out the impropriety of using a majority opinion to deliver a lecture to the political branches. *See United States v. Harris,* 165 F.3d 1277 (9th Cir.1999) (Kozinski, J., dissenting from the order rejecting the suggestion for rehearing en banc); *United States v. Mussari,* 168 F.3d 1141 (9th Cir.1999) (Kozinski, J., dissenting from the order rejecting the suggestion for rehearing en banc). Bad as the earlier cases were, the opinion here breaks dangerous new ground in two ways.

First, rather than merely giving advice to the legislative branch on how it should resolve broad questions of sentencing policy, *see United States v. Harris,* 154 F.3d 1082, 1085 (9th Cir.1998), or to the Executive Branch on the future use of its prosecutorial discretion, *see United States v. Mussari,* 152 F.3d 1156, 1159 (9th Cir. 1998), the majority here tries to buffalo the Department of Justice into changing its position in the very case now before the court. *See United States v. Burdeau,* 168 F.3d 352, 359 (9th Cir.1999). After determining that "defendant's legal arguments are unavailing," *id.* at 358, which ended their legitimate role in the case, the majority trots out a detailed plan of action for sparing defendant a portion of his sentence. *See id.* at 359. Unseemly as it is for a court to offer abstract policy recommendations, it is much worse to leverage the court's moral authority to change a result when we are supposed to be impartial arbiters. As Judge Graber notes, we "are not asked for our personal preferences about the results of cases." *Id.* at 360 (Graber, J., concurring in part and dissenting in part). Except as the law requires, a court must not take sides-or appear to take sides-among the litigants before it. Concurring and dissenting opinions, which speak only for the signatory judges, are the appropriate vehicles for airing our personal views.

Second, the majority did not merely come up with a plan of action; it also stayed the mandate 60 days to give the United States Attorney on opportunity to act on its advice. *See Burdeau,* 168 F.3d at 359. While staying the mandate is "entrusted to [our] sound discretion," *Bryant v. Ford Motor Co.,* 886 F.2d 1526, 1528 (9th Cir.1989), we abuse that discretion when we exercise it without a legitimate basis. *See Calderon v. Thompson,* 523 U.S. 538, ——, 118 S.Ct. 1489, 1502, 140 L.Ed.2d 728 (1998). Delay of the mandate, like any other judicial act, must be supported by a legally sufficient reason. A panel may not delay the mandate for no reason ("We stay the mandate for two weeks because we feel like it"); it may not delay the mandate for a bad reason ("We don't like the defendant and we therefore stay the mandate just to irk him"); it mat not delay the mandate for a reason unrelated to the case before it ("We stay the mandate to give the government lawyers a chance to read and absorb the tightly-packed wisdom of *The Anatomy of an Execution: Fairness vs. 'Process',* 74 N.Y.U. L. Rev. 313 (1999)"); and it may not delay the mandate to pressure the parties into accepting advice the court has no authority to give and cannot order the parties to follow.

Judge Tashima objects to the use of the en banc process to correct objectionable language, but he concedes that this is not a universal rule. Tashima concurrence at 6886 ("Subject to rare exceptions...."). Judge Tashima thus agrees that the full court *can* act as the "Language Police," *id.* at 6887, when a panel says or does something, even in dicta, that other judges find inappropriate. Despite his sweeping language, then, Judge Tashima's cavil is rather narrow: He does not think that this is one of those "rare exceptions." Respectfully, we disagree. When a panel, even in dicta, breaches the wall that insulates the

**1094**

court from the political branches, it ceases to act as a court. This implicates all of us. For example, when the Harris panel criticized congress about the severity of criminal sentences, it was widely perceived to be speaking for the court as a whole. *See, e.g.,* Paul Elias, *Circuit Judges Lash Out At Sentencing Guidelines*, Recorder (San Francisco), Sept. 10, 1998, at 1 ("Criticizing Congress once again for handcuffing federal judges on sentencing, the Ninth Circuit U.S. Court of Appeals on Tuesday 'reluctantly' upheld what amounts to life sentences doled out to two teen–aged armed robber."). While it is well within the common law tradition for courts to speak to other courts about the development of legal rules, it is novel and inappropriate to use the bench as a pulpit from which to deliver sermons to Congress about which laws it should pass, or to instruct the Justice Department on how to prosecute its criminal cases. These are matters entrusted by the Framers to the political branches, an we may not squander the court's moral capital by attempting to influence political processes. Moreover, the panel majority here did not merely speak. Rather, it cast itself into the role of defense lawyer and used the court's moral authority to hector the government into accepting a plea bargain that the actual defense lawyer had once rejected. This is action, not dicta.

By leaving this opinion on the books, we encourage future panels to meddle in the business of the political branches. This will further erode the separation of powers and undermine respect for the judiciary. *See Burdeau,* 168 F.3d at 360 (Graber, J., concurring in part and dissenting in part). The consequences may be serious. When we act like politicians we can expect to be treated like politicians.