In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2916

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEFFREY P. TAYLOR,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:11-cr-112-001 — **Rudy Lozano**, *Judge.*

ARGUED SEPTEMBER 12, 2013 — DECIDED JANUARY 27, 2015

Before POSNER, EASTERBROOK, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Jeffrey Taylor engaged in sexual acts in front of a webcam during online chats with a law-enforcement officer posing as a 13-year-old girl. For this conduct he was convicted of attempting to use the facilities of interstate commerce to engage in criminal sexual activity with a minor. *See* 18 U.S.C. § 2422(b). We reversed and ordered an acquittal, holding that "sexual activity" under § 2422(b) requires evidence of physical contact. *United States v. Taylor*, 640 F.3d 255,

260 (7th Cir. 2011). Taylor was recharged for the same conduct but a different crime: attempting to transfer obscene material to a minor using a means of interstate commerce. *See* 18 U.S.C. § 1470. A jury convicted him as charged.

In this new appeal, Taylor argues that the Double Jeopardy Clause barred the second prosecution. He also challenges the district court's handling of strikes for cause during jury selection and certain limitations on his cross-examination of two law-enforcement officers. His final claim of error is a challenge to the district court's determination that his conviction for violating § 1470 triggers the registration requirements of the Sex Offender Registration and Notification Act ("SORNA"). 42 U.S.C. § 16911(5)(A)(ii), (7)(I) (2012) (defining "sex offense" for purposes of the registration regime).

Taylor's double-jeopardy claim is foreclosed by Supreme Court precedent; he has preserved it for further review. The challenge to the composition of the jury fails for two reasons: (1) Taylor used peremptory strikes to remove two of the three jurors about whom he now complains; and (2) he did not object to the third, and the judge did not commit plain error in seating that juror. The judge's evidentiary rulings also were sound; the relevance of the excluded cross-examination was tenuous at best. Finally, a procedural impediment prevents us from reviewing the judge's SORNA ruling.

## I. Background

On August 2, 2006, Taylor entered an online chat room and began a conversation with "elliegirl1234." "Ellie" identified

herself as a 13-year-old girl from Lafayette, Indiana. Taylor responded that he was 37 and from Logansport. The conversation quickly became graphic as Taylor described his physique and asked whether Ellie had engaged in sexual acts with her boyfriend. Taylor wanted to see Ellie to masturbate in front of a webcam; he asked her whether she had a webcam, but she indicated that she did not. Taylor then turned on his webcam and masturbated in front of it so that Ellie could see.

Taylor and Ellie conversed online on multiple occasions over the next two weeks. The conversations were always sexual in nature. On August 14 the conversation turned to arranging a meeting in person, and Taylor asked Ellie to fantasize about what would happen if the two met. Taylor expressed some concern about meeting in person because he "could go to jail." (In an earlier conversation, he had referred to Ellie as "jailbait.") During this online chat, Taylor masturbated a second time in front of his webcam so that Ellie could see.

Ellie was not a 13-year-old girl but an online identity assumed by law-enforcement personnel working on a joint federal-state sting operation targeting child sex offenders. One of the investigators used a picture of herself from when she was 15 or 16 to help create the chat-room profile.

Taylor was eventually arrested and convicted of attempting to use the facilities of interstate commerce to engage in criminal sexual activity with a minor. *See* § 2422(b). We reversed that conviction, holding that the statutory term "sexual activity"—like its close cousin "sexual act"—requires evidence of physical contact. *Taylor*, 640 F.3d at 257; *see also* 18 U.S.C. § 2246(2), (3)

(2012) (defining "sexual act" and "sexual contact," respectively).[1] Taylor had not attempted to commit a contact offense with Ellie—his actions were limited to the online chat room—so we directed entry of a judgment of acquittal. *Taylor*, 640 F.3d at 260.

Taylor was again indicted for his August 2006 chat-room conduct, this time on two counts of attempting to transfer obscene material to a minor. *See* § 1470. He moved to dismiss the new charges on double-jeopardy grounds. The district judge denied the motion, noting that § 1470 and § 2422(b) require proof of different elements. The case proceeded to trial on the new charges.

During voir dire, a number of jurors indicated that either they or an immediate family member had been the victim of a crime or some form of sexual abuse. Prospective juror C.P. disclosed that her daughter had been raped at age 15 by two men, but she gave unequivocal assurances that she could be impartial despite this incident. Taylor challenged C.P. based on her daughter's rape, but the judge declined to strike her for cause, saying that Taylor had to take her at her word that she would not let the incident affect her ability to be fair. Prospective juror P.W. indicated that she too had been raped. The crime occurred about a year before trial, but P.W. unconditionally assured the court that she could remain impartial and

---

[1] The Fourth Circuit has subsequently disagreed with our analysis. *See United States v. Fugit*, 703 F.3d 248, 255–56 (4th Cir. 2012) (defining "sexual activity" to include "conduct connected with the 'active pursuit of libidinal gratification'").

would not let her own experience affect her decision in the case. The judge twice denied Taylor's motion to remove P.W. for cause. Taylor responded to these rulings by using peremptory challenges to strike both C.P and P.W. from the panel.

A third prospective juror, R.W., expressed reservations about his ability to be impartial based on a crime against his two daughters, who had been robbed while working at a restaurant. The robber—a former employee of the restaurant—had locked them in a cooler during the robbery. When questioned by the court about his ability to be impartial, R.W. was initially unsure:

> Q: Anything about that situation or what occurred that would in any way cause you any bias or prejudice in this case either for or against the government or for or against the defendant?
>
> A: I don't think so, no.
>
> Q: You say, I don't believe so. Is there any doubt?
>
> A: I don't think so. I don't know.
>
> Q: The reason I ask you that, … it's important that everybody in this case—
>
> A: I know.
>
> Q: —receive a completely fair and impartial trial.
>
> A: I would hope not, yes.
>
> Q: Okay. Do you have any doubt right now as you [sit] here?

A: Maybe just a tinge, but I'll say no. I'll say no.

R.W.'s responses were sufficiently ambiguous that Taylor's counsel requested—and the government agreed—that the judge should ask him again whether he could set the incident aside and fairly evaluate the case based on the evidence and the law. The judge did so, and this time R.W. unambiguously said "yes," he could be fair. Taylor raised no further objection to R.W. and used his last peremptory challenge on a different juror. R.W. was seated on the jury.

During trial, Taylor's attorney tried several times to cross-examine Special Agent Larry Brown and Investigator Cheri Pruitt about their observations of other chat-room users, the prevalence of minors in adult chat rooms, and whether people in online chat rooms were generally truthful in their profiles. The theory of relevance for this line of cross-examination was not clearly articulated, but the apparent goal was to bolster an argument that Taylor did not actually believe that Ellie was a 13-year-old girl. The judge sustained the government's objections to these questions.

The jury returned a verdict of guilty on both counts. By the time of sentencing, Taylor had already served more than four years on the overturned conviction, which exceeded the 24 to 30 months that the Sentencing Guidelines recommended for the new convictions. So the judge imposed a three-year term of probation.

In an addendum to the presentence report, the probation officer urged the court to find that Taylor's convictions for violating § 1470 require him to register as a sex offender under SORNA. *See* 42 U.S.C. § 16913(a) (requiring a "sex offender" to

register "in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student"); *see also id.* § 16913(b) (requiring initial registration before the end of a sentence of imprisonment for the offense giving rise to the registration requirement or within three business days of sentencing, if the offender is not sentenced to prison). In the addendum, the probation officer referred to a letter from the Sheriff's Office in Cass County, Indiana— Taylor's county of residence—advising the parties that although state law did not independently require registration, the convictions trigger SORNA duties and Taylor would be required to register as a Tier I sex offender for a period of 15 years. *See id.* § 16915(a)(1) (establishing a minimum registration period of 15 years).

The government agreed with the probation officer and asked the judge "to make a finding under SORNA that [Taylor] is a Tier I sex offender, and therefore, [is] subject to the registration requirement of 15 years." Taylor objected, arguing that his § 1470 convictions are not sex offenses as defined by SORNA. The judge disagreed, adopted the position taken by the government and the probation officer, and held that "SORNA's registration requirement applies to the defendant."

When pronouncing sentence, however, the judge ordered Taylor to register as a condition of probation and made no mention of SORNA. Nor does the judgment refer to SORNA. Instead, the judgment states that as a condition of three years' probation, Taylor "shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer."

## II. Analysis

### A. Double Jeopardy

Taylor first argues that his second prosecution on charges of violating § 1470, based on the same conduct for which he was acquitted under § 2422(b), violates the Double Jeopardy Clause.[2] He acknowledges that this argument is foreclosed by Supreme Court precedent. The Double Jeopardy Clause prohibits a second prosecution for the same offense following an acquittal and the imposition of multiple punishments for the same crime. *Illinois v. Vitale*, 447 U.S. 410, 415 (1980). The dispositive question for this type of double-jeopardy claim is whether the two offenses—§ 2422(b) and § 1470—have different elements. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932). They clearly do.

Section 1470 requires proof that the defendant transferred obscene material to a child under the age of 16 using a means of interstate commerce. Section 2422(b), in contrast, requires proof that the defendant used a means of interstate commerce to knowingly persuade, induce, entice, or coerce a person under the age of 18 to engage in sexual activity and that the sexual activity constitutes a criminal offense. That Taylor's offenses were attempts—Ellie was a fictitious 13-year-old— does not affect the *Blockburger* analysis here. Because each crime requires proof of at least one fact not required by the other, § 1470 and § 2422(b) are not the same offense and

---

[2] The Double Jeopardy Clause of the Fifth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V.

principles of double jeopardy are not implicated. *See United States v. Loniello*, 610 F.3d 488, 491 (7th Cir. 2010) ("When different indictments charge crimes with different elements, successive trials do not violate the double jeopardy clause.").

No further analysis is required. Taylor indicates that he raises the double-jeopardy argument simply to preserve it for Supreme Court review; he advocates a return to the approach of *Grady v. Corbin*, 495 U.S. 508 (1990), which was overruled in *United States v. Dixon*, 509 U.S. 688, 704 (1993). He has preserved that argument.

**B. Jury Selection**

Taylor next raises several claims of error relating to the district court's handling of strikes for cause during jury selection. Our review is for abuse of discretion, which in this context is highly deferential. *United States v. Allen*, 605 F.3d 461, 464 (7th Cir. 2010) (explaining that we give "great deference" to the trial judge's rulings on challenges to jurors for cause). We have only a paper record before us; the district judge had the "unique opportunity to assess the credibility of the jurors during voir dire examination, as well as their demeanor throughout the course of the trial." *Id*. (internal quotation marks omitted); *see also Griffin v. Bell*, 694 F.3d 817, 821 (7th Cir. 2012).

Taylor challenged juror C.P. for cause after she reported that her daughter was raped when she was 15 years old. He also challenged juror P.W. because she herself was a rape victim. Both jurors maintained that they could be impartial

notwithstanding these experiences, and the district court declined to remove them for cause. Taylor thereafter used peremptory challenges to strike both women from the jury pool.

In *Ross v. Oklahoma*, the Supreme Court held that the defendant's right to an impartial jury is not violated when he uses a peremptory challenge to strike a juror who should have been removed for cause. 487 U.S. 81, 88 (1988). The loss of a peremptory challenge is neither a constitutional violation nor violates any rule-based right. *See id.* at 86; *see also United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2000) (denying any constitutional right to peremptory challenges); *United States v. Brodnicki*, 516 F.3d 570, 575 (7th Cir. 2008). The defendant's Sixth Amendment right to an impartial jury is vindicated so long as the jury that actually sits is impartial. *Ross*, 487 U.S. at 88.

Taylor contends that by using peremptory challenges on these two jurors, he was unable to strike juror R.W., who had reservations about his impartiality. As we've explained, R.W. initially expressed some uncertainty about his ability to be impartial after disclosing that his daughters had been the victims of a robbery. His ambiguous answers prompted follow-up questioning by the judge, and R.W. ultimately assured the court—unequivocally and without reservation—that he could fairly judge the case. Taylor raised no further objection to R.W. and indeed exercised his last peremptory challenge on a different juror.

Taylor's current objection to R.W. is therefore new on appeal, and he bears the heavy burden of satisfying plain-error

review. *See* FED. R. CRIM. P. 52(B); *United States v. Sloan*, 492 F.3d 884, 892 (7th Cir. 2007). The requirement of an impartial jury is met when "the prospective juror has given final, unequivocal assurances, deemed credible by the judge, that for purposes of deciding the case, she can set aside any opinion [she] might hold, relinquish her prior beliefs, or lay aside her biases or her prejudicial personal experiences." *Allen*, 605 F.3d at 464–65 (internal quotation marks and citations omitted).

A prospective juror does not come to the courtroom as a *tabula rasa*. The important question is whether the juror can put aside the experiences and beliefs that may prejudice his view of the case and render a verdict based on the evidence and the law. *Id.*; *see also Thompson v. Altheimer & Gray*, 248 F.3d 621, 625–26 (7th Cir. 2001). Although R.W. was initially equivocal about whether the robbery of his daughters would affect his judgment in the case, the judge's follow-up examination cleared up the ambiguity. The judge asked him if he "could be fair and impartial to both sides and decide this case only on the evidence introduced during this trial and the law that I am giving you." To this question R.W. answered "yes" without qualification. This unequivocal assurance—deemed credible by the trial judge—is sufficient. *Allen*, 605 F.3d at 464–65.

We note for good measure that R.W.'s initial uncertainty was extremely mild; he said that he had "[m]aybe just a tinge" of doubt about his ability to be perfectly neutral given his daughters' victimization. But he immediately withdrew that statement and answered "no" to the judge's question about whether he harbored any doubt about his ability to be impar-

tial. And that was *before* the judge pursued a clean follow-up question at Taylor's request, to which R.W. responded unequivocally that he could be fair to both sides and decide the case based only on the evidence and the law.

Finally, we note that R.W. never expressed any bias toward either party and gave no indication that he would prejudicially evaluate witness testimony or evidence. In his initial examination, he unambiguously assured the court that he understood the presumption of innocence and the government's burden to prove its case beyond a reasonable doubt. The judge did not err in accepting R.W.'s final, unequivocal assurance of impartiality and seating him on the jury.

### C. Limits on Cross-Examination

Taylor also objects that he was not allowed to cross-examine Agent Brown and Investigator Pruitt about their observations of other chat-room users, the presence of minors in adult chat rooms, and the frequency of lying by chat-room users. His theory of relevance for this line of questioning is that the officers' testimony about the general veracity of chat-room users would have undermined the government's case that he actually believed he was conversing with a 13-year-old girl.

Limitations on cross-examination are reviewed for abuse of discretion unless the limitation implicates a core component of the Sixth Amendment confrontation right, in which case we review the issue de novo. *See United States v. Beck*, 625 F.3d 410, 417 (7th Cir. 2010). The deferential standard applies here. Taylor's counsel had ample opportunity to cross-examine the

officers on core confrontation issues, including the key facts of Taylor's interactions with Ellie. The excluded cross-examination lies at the outer periphery of relevance, if it was relevant at all.

Some of the excluded questions were flatly irrelevant. Early in his cross-examination of Agent Brown, Taylor's counsel asked whether the agents had violated Yahoo! policies by pretending to be a minor. When the prosecutor objected on relevance grounds, counsel had difficulty explaining how *Agent Brown's* understanding of the Yahoo! terms of use made it less likely that *Taylor* believed that he was talking to a minor. Indeed, Taylor still has not plausibly explained the relevance of this line of questioning.

The judge also appropriately excluded questions about the officers' observations of other chat-room users. The link between their observations of chat-room behavior and Taylor's state of mind regarding Ellie's age is tenuous at best. To connect their observations to Taylor's knowledge requires a series of unstated—and unfounded—assumptions: (1) that the officers had a basis for knowing how often other chat-room users were truthful in their profiles; (2) that the officers' observations were sufficiently representative to draw inferences about chat-room users more generally; and (3) that Taylor was aware of the general propensity of chat-room users to provide false information in their profiles (if there was such a propensity). The judge was well within his discretion to exclude this line of cross-examination; it was speculative and potentially misleading.

The judge did allow Taylor to present evidence that Yahoo! policies prohibited minors from being in the chat room, so the limitations placed on his cross-examination of Agent Brown and Investigator Pruitt did not prevent him from presenting his theory of the case or otherwise interfere with his ability to cross-examine the officers. We find no abuse of discretion.[3]

### D. SORNA Sex-Offender Registration

Taylor's final argument is that the district court erroneously concluded that his convictions for violating § 1470 qualify as "sex offenses" under SORNA, triggering the Act's registration regime.

SORNA requires the states to establish and maintain a jurisdiction-wide sex-offender registry that meets certain minimum standards, *see generally* 42 U.S.C. § 16912(a) (2012), and states that fail to do so may lose some federal funding, *see id.* § 16925. Although the states are charged with implementing the registries, sex offenders have a federal duty to register with the state irrespective of whether the state's implementation meets federal requirements.[4] § 16913(a); *see United States v.*

---

[3] Taylor argues that the cumulative-error doctrine mandates reversal. Since we find no error, we have no occasion to consider that argument.

[4] Some states have imposed registration duties more onerous than SORNA's requirements, and in these states those added registration requirements are duties solely created by state law. *See, e.g.*, WIS. STAT. § 301.45 (applying registration requirements to all persons convicted of a Wisconsin sex offense, regardless of where they live, work, or go to school). *But see*

(continued...)

*Dixon*, 551 F.3d 578, 582 (7th Cir. 2008), *rev'd on other grounds sub nom.*, *Carr v. United States*, 560 U.S. 438 (2010); *United States v. Hester*, 589 F.3d 86, 92 (2d Cir. 2009); *United States v. Brown*, 586 F.3d 1342, 1348–49 (11th Cir. 2009); *United States v. Gould*, 568 F.3d 459, 468–69 (4th Cir. 2009). Thus, federal law imposes a duty on sex offenders to register where they live, work, or go to school—a duty that is also imposed by state law if the state's registration requirements track SORNA.

A "sex offender" for purposes of SORNA's registration duty is defined broadly as "an individual who was convicted of a sex offense." 42 U.S.C. § 16911(1). The statute also defines the term "sex offense" very broadly through a maze of definitions and sub-definitions. *See* § 16911(5). SORNA prescribes a minimum registration period of 15 years (applicable to Tier I sex offenders), but the registration duty is longer for some offenders (25 years for Tier II offenders and life for Tier III offenders). *See* § 16915(a).

The parties and the probation officer asked the judge to decide whether Taylor's § 1470 convictions qualify as "sex offenses" under SORNA. The Cass County Sheriff's Office had advised the court that although the convictions did not trigger a registration duty under state law, Taylor would be required to register as a Tier I sex offender under federal law. The

---

[4] (...continued)

*Mueller v. Raemisch*, 740 F.3d 1128, 1132 (7th Cir. 2014) (noting, without expressing any opinion on the merits, that Wisconsin's universal registration requirement may trigger a constitutional question about its extraterritorial application when applied to nonresidents with no connection to the state).

government agreed with the Sheriff and, on the recommendation of the probation officer, urged the judge to find that Taylor is a Tier I sex offender under SORNA. Taylor objected, arguing that his convictions are not sex offenses under the federal definition. The judge sided with the government and held that Taylor's § 1470 convictions are sex offenses as defined by SORNA.

When pronouncing sentence, however, the judge ordered Taylor to register with the state sex-offender registration agency as a condition of three years' probation; the judge did not refer to SORNA at all. The judgment conforms to the judge's oral pronouncement of sentence and does not mention registration under § 16913, the registration period prescribed by § 16915, or SORNA more generally. Instead, in the section listing special conditions of probation, the judgment states that Taylor "shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer." Like other conditions of probation, this condition ends when probation ends.

The registration duty under § 16913, in contrast, lasts for a minimum of 15 years. *See* § 16915(a)(1) (setting a 15-year minimum registration period for Tier I sex offenders). Yet as we've noted, the judgment is silent about SORNA and its duration rule. The district court can require Taylor to register with the state sex-offender registration agency as a condition of probation regardless of whether the definition of "sex offense" in § 16911 includes his crimes. Although the judge orally ruled on that question, the court's judgment rests not on

SORNA but on the court's authority to set conditions of probation. In other words, the judgment does not implement the court's SORNA ruling but instead imposes a more modest registration duty limited to the three-year duration of Taylor's probation.

This procedural quirk prevents us from reviewing the judge's SORNA ruling. As the Supreme Court has recently reminded us, we review the district court's *judgments*, not its opinions. *See Jennings v. Stephens*, No. 13–7211, 2015 WL 159277, at *5 (U.S. Jan. 14, 2015) ("This Court, like all federal appellate courts, does not review lower courts' opinions, but their *judgments*."); *see also, e.g.*, *California v. Rooney*, 483 U.S. 307, 311 (1987); *Black v. Cutter Labs.*, 351 U.S. 292, 297–98 (1956); *Seymour v. Hug*, 485 F.3d 926, 929 (7th Cir. 2007). "Courts reduce their opinions and verdicts to judgments precisely to define the rights and liabilities of the parties." *Jennings*, 2015 WL 159277, at *5. Here, the judgment simply tells Taylor to register with the state sex-offender registration agency as a condition of three years' probation.

Taylor has not challenged the condition of probation. Instead, he asks us to reverse the judge's oral SORNA ruling, but that ruling was not reduced to judgment. To the contrary, the judgment imposes a much more limited registration obligation. The government, for its part, defends the judge's SORNA ruling and asks us to affirm it. But the government did not file a cross-appeal challenging the district court's failure to embody that ruling in the judgment. Without a cross-appeal, we cannot review the judge's SORNA ruling, which if correct could be thought to increase Taylor's registration obligation to

15 years, well beyond the three-year period prescribed by the judgment. "[A]n appellee who does not cross-appeal may not 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary.'" *Jennings*, 2015 WL 159277, at *5 (quoting *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924)); *see also Greenlaw v. United States*, 554 U.S. 237, 245 (2008). That the judge's oral statements about SORNA might conceivably affect some future proceeding does not entitle us to treat them as appealable subjects. *Jennings*, 2015 WL 159277, at *5–6.

We appreciate that Taylor needs to know what his legal obligations are after his probation ends. Perhaps for this reason, SORNA requires that "[a]n appropriate official" notify sex offenders of the duty to register "shortly before" their release from custody, or if the offender is not in custody, "immediately after the sentencing of the sex offender[] for the offense giving rise to the duty to register." 42 U.S.C. § 16917(a). The statutory language contemplates notice from the Executive Branch, not the judiciary. The Department of Justice takes the position that Taylor must register under SORNA; that much is clear from the government's argument at sentencing and on appeal. Taylor disputes the government's position, of course, which is why he joined the prosecutor in asking the district court to decide the question. The federal courts can issue declaratory judgments to resolve concrete disputes, of which this is one. But the district court did not issue a declaratory judgment resolving the parties' dispute about whether SORNA applies.

In short, because the judgment does not incorporate the judge's SORNA ruling and the government has not filed a cross-appeal contesting that omission, there is nothing for us to review. *See Azeez v. Fairman*, 795 F.2d 1296, 1297 (7th Cir. 1986).

AFFIRMED.