# In the United States Court of Federal Claims

No. 91-1470 L
(Filed: November 4, 2013)

```
*************************************
THE ESTATE OF E. WAYNE HAGE          *
AND THE ESTATE OF JEAN N. HAGE,      *
                                     *
                                     *   Motion for Hearing; Motion for Briefing;
                     Plaintiffs,     *   Motion for Appointment of Special Master;
                                     *   RCFC 52(b); RCFC 59; Res Judicata
v.                                   *
                                     *
THE UNITED STATES,                   *
                                     *
                     Defendant.      *
                                     *
*************************************
```

Mark L. Pollot, Boise, ID, for plaintiffs.

Bruce Trauben, United State Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY,** Judge

Plaintiffs, the Estate of E. Wayne Hage and the Estate of Jean N. Hage, request a hearing following the remand of this action by the United States Court of Appeals for the Federal Circuit. Estate of Hage v. United States, 687 F.3d 1281, reh'g and reh'g en banc denied, (Fed. Cir. 2012) ("Federal Circuit Ruling"), cert denied, 133 S. Ct. 2824 (2013). According to plaintiffs, despite decades of litigation and numerous rulings by the trial court, including its 2010 decision awarding money damages and directing the Clerk of Court to enter final judgment and close the case, unresolved legal issues remain. Plaintiffs request an expedited briefing schedule as well as the appointment of the former trial judge in this case to serve as a special master to adjudicate these issues. For the reasons set forth below, the court finds plaintiffs' motion lacks merit and it is hereby **DENIED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

More than 20 years ago, plaintiffs filed their complaint against the United States alleging compensation owed for a Fifth Amendment taking of private property under the Just Compensation Clause of the Constitution, range improvements pursuant to 43 U.S.C. §

1752(g),[1] and breach of contract. During the ensuing two decades, the court conducted multiple hearings and issued numerous decisions. See Hage v. United States, 35 Fed. Cl. 147 (1996) ("Hage I"); Hage v. United States, 35 Fed. Cl. 737 (1996) ("Hage II"); Hage v. United States, 42 Fed. Cl. 249 (1998) ("Hage III"); Hage v. United States, 51 Fed. Cl. 570 (2002) ("Hage IV"); Estate of Hage v. United States, 82 Fed. Cl. 202 (2008) ("Hage V"); Estate of Hage v. United States, 90 Fed. Cl. 388 (2009) ("Hage VI"); Estate of Hage, No. 91-1470L, 2010 WL 9110258 (Fed. Cl. June 9, 2010) ("Hage VII").

Ultimately, on August 2, 2010, the trial court issued its Final Judgment and Order resolving all outstanding issues on liability and damages. Estate of Hage v. United States, 93 Fed. Cl. 709 (2010) ("Hage VIII"). In Hage VIII, the trial court awarded damages in the amount of $14,243,542.00 and directed the Clerk of Court "to enter final judgment accordingly and to close the case." Id. Two days later, the Clerk of Court entered judgment as ordered, pursuant to Rules of the United States Court of Federal Claims ("RCFC") 58. See Judgment, filed Aug. 4, 2010.

Defendant filed its notice of appeal on October 1, 2010, and plaintiff filed their cross appeal two weeks later. On July 26, 2012, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") issued its decision which reversed in part, vacated in part, and affirmed in part the final judgment, and remanded the matter back to this court "for further proceedings consistent with [the] opinion." Estate of Hage, 687 F.3d at 1286-88. The Federal Circuit denied rehearing and rehearing en banc on October 19, 2012; and on June 17, 2013, the United States Supreme Court denied certiorari.

Despite the plain language of the trial court's decision in Hage VIII that directed the entry of final judgment and the closing of the case, and the subsequent Federal Circuit Ruling that reversed the trial court's liability determination and damages assessment in favor of plaintiffs, on July 6, 2013, plaintiffs filed the instant motion asserting that additional proceedings were necessary. According to plaintiffs, certain liability theories remain unresolved. On July 31, 2013, the case was reassigned and transferred to the undersigned judge. On September 3, 2013, the parties filed a joint status report.

In the joint status report, plaintiffs contend that the Federal Circuit Ruling did not end the litigation because it "was limited in scope, [] did not reverse the majority of the trial court's findings of fact and conclusions of law, and that a substantial number of issues remain to be decided in this case on remand. . . . " Joint Status Report 1. In defendant's portion of the report,

---

[1] 43 U.S.C. § 1752(g) (1988) provides in relevant part:

> Whenever a permit or lease for grazing domestic livestock is canceled in whole or in part, in order to devote the lands covered by the permit or lease to another public purpose, including disposal, the permittee or lessee shall receive from the United States a reasonable compensation for the adjusted value, to be determined by the Secretary concerned, of his interest in authorized permanent improvements placed or constructed by the permittee or lessee on lands covered by such permit or lease, but not to exceed the fair market value of the terminated portion of the permittee's or lessee's interest therein.

it set forth an opposing view – that the Federal Circuit's Ruling resolved all issues and that there is nothing more for this court to do except direct the Clerk of Court to dismiss the action.  Id. at 3-4.  Defendant is correct.

## II.  DISCUSSION

### Plaintiffs Are Not Entitled to the Relief They Seek.

**1.  The decisions of the Court of Federal Claims and Federal Circuit leave no room for doubt that additional proceedings are unwarranted.**

Plaintiffs contend that certain issues remain for the court's resolution.  Specifically, plaintiffs argue that unresolved issues include whether the Federal Circuit Ruling "reversed the trial court's finding of a physical taking of water rights based upon a practical ouster and the physical impacts of regulatory policies and procedures through threats and intimidation with respect to ditches and streams;" whether there was a physical or regulatory takings of certain water rights and the erection and removal of fencing; and whether subsequent decisions of law and intervening facts, require or permit review of the Federal Circuit findings notwithstanding the "law of the case doctrine."  Joint Status Report 1-2.  Plaintiffs' contentions lack merit both in fact and law.

There can be no serious question that the trial court's eight separate rulings adjudicated all issues raised by plaintiffs' complaint.  Indeed, the United States Court of Federal Claims ("Court Federal Claims") rendered the following rulings in Hage IV, 51 Fed. Cl. at 592 regarding plaintiffs' physical and regulatory takings theories:  that plaintiffs had vested water rights to the Southern Monitor Valley, Ralston, and McKinney allotments, id.; that plaintiffs acquired 1866 Act Ditch rights-of-way water rights, id.; and, finally, that plaintiffs did not possess a property interest in the surface estate and grazing permits that could be taken within the meaning of the Just Compensation Clause, id.

Then, in Hage V, 82 Fed. Cl. at 208, having determined the scope of plaintiffs' property rights, the trial court next decided which of plaintiffs' alternate takings theories – physical vs. regulatory –  was the appropriate rubric to apply when performing its legal analysis.  The trial court explained "there is no bright line between physical and regulatory takings."  Id. Ultimately, the court concluded that the government's construction of fences around springs and streams that prevented plaintiffs' cattle access to the water caused a physical taking of plaintiffs' water rights during the period plaintiffs had grazing permits.  Id. at 211.  In addition, the trial court found a regulatory taking by the government allowing vegetation to accumulate and overgrow the stream beds, by preventing the Hages from performing maintenance in the streambeds and ditches, and by allowing beavers to establish dams in the upper reaches of the streams thus impounding water.  Id. at 211-12.  Based upon these findings of fact, the trial court concluded these actions prevented plaintiffs from accessing and using that water for their cattle. Id. at 212.

The trial court also rules that plaintiffs could have put the water from their 1866 Act Irrigation ditches to beneficial use for agricultural purposes and, therefore, the government was liable for a regulatory taking of plaintiffs' ditches.  Id. at 212-13.  The trial court found plaintiffs were entitled to an award of compensation under 43 U.S.C. § 1752(g).  Id. at 214-15.

Not all rulings were in plaintiffs' favor. The trial court denied "Plaintiffs' claim for compensation for the taking of the forage in their 1866 Act ditch rights-of-way." Id. at 213 n.11. And relying on the precedent set forth by the Federal Circuit in Colvin Cattle Co. v. United States, 468 F.3d 803, 807 (2006), the trial court also found that there had been no taking of plaintiffs' cattle or the "entire ranch." Id. at 209.

On appeal, the Federal Circuit determined that plaintiffs' regulatory taking claim was not ripe because they failed to apply for the required special use permit that would have allowed them to perform the maintenance necessary to keep their irrigation ditches operational. Federal Circuit Ruling, 687 F.3d at 1287. According to the Federal Circuit, "[t]here is no evidence suggesting that the disputes between the Forrest Service and Hages would cause the Forest Service to deny the Hages special use permits to perform ditch maintenance." Id. at 1288. The Federal Circuit also found that the claim relating to fences that were constructed during 1981-1982 was barred by the Tucker Act's six-year statute of limitations. Id. at 1289-90 ("As an initial matter, we agree with the government that any claim based on the fences erected in 1981 – 1982 is barred by the six-year statute of limitations period, 28 U.S.C. § 2501, because this suit was filed in 1991.").

In its review of the trial court's physical takings analysis, the Federal Circuit agreed with the Hages "that the government could not prevent them from accessing water to which they owned rights without just compensation." Id. at 1290. Nevertheless, the Federal Circuit explained that:

> The Hages' claim, however is flawed because there is no evidence that the government actually took water that they could put to beneficial use. For example, the Hages do not allege or point to evidence that the fences prevented the water from reaching their land [and] the Hages do not allege that there was insufficient water for their cattle on the allotments or that they could have put more water to use. Because there is no evidence that the government's actions resulted in taking the Hages' water rights, the [Court of Federal Claims] erred in holding that the construction of fences amounted to a physical taking.

Id.

Similarly, concerning plaintiffs' claim for compensation for range improvements pursuant to 43 U.S.C. § 1752(g), the Federal Circuit found that because the Hages failed to first seek compensation from the Secretary of Agriculture, the trial court's compensation award must be set aside because that claim too was unripe:

> We addressed this issue in Colvin Cattle, in which we held that when a claimant 'd[oes] not request a determination by the Secretary of the value of its improvements as required by statute . . . its claim is not ripe for failure to exhaust administrative remedies. [citation omitted] As in Colvin Cattle, the Hages did not request a determination by the Secretary of the value of their improvements. The Hages fault the government for not presenting evidence of procedures to seek such a determination, but

the Hages bear the burden of establishing jurisdiction, not the government. . . . The Hages do not argue that they attempted to seek a determination by the Secretary, and without doing so, the Hages' claim for range improvements pursuant to § 1752(g) "is not ripe for failure to exhaust administrative remedies." [citation omitted]  We thus hold that the [Court of Federal Claims] erred in awarding the Hages compensation for range improvements . . . because the Hages' claim is not ripe.

Id. at 1290-91.

In the summation of its holding, the Federal Circuit concluded:

The Hages' regulatory takings claim and claim for compensation pursuant to 43 U.S.C. § 1752(g) are not ripe, and we therefore vacate the [Court of Federal Claims] award of damages.  To the extent the Hages' claim for a physical taking relies on fences constructed in 1981- 1982, this claim is untimely.  To the extent the physical takings claim relies on fences constructed in 1988 - 1990, we reverse because there is no evidence that water was taken that the Hages could have put to beneficial use.

Id. at 1292.

Nothing in either the trial court's or appellate courts' respective decisions suggest that issues requiring further scrutiny by the trial court remain.  Indeed, if the trial court intended to conduct more proceedings to resolve an outstanding legal issue, it would have said so in its 2010 decision.  The prior judge assigned to this case labored diligently and provided numerous detailed decisions that explored every theory of liability raised in the complaint.  Rather than suggest that future hearings might be necessary, in Hage VIII, , the trial court directed the Clerk of Court to "enter final judgment [] and to close the case."  Hage VIII, 93 Fed. Cl. at 709. Common sense dictates that if the court intended to conduct future proceedings, it would not have directed the closing of the case and the entry of final judgment.[2]  Similarly, if the Federal Circuit intended that this court open the record, receive additional evidence, and render new or additional findings of fact and conclusions of law, then the appellate court would have provided that clear instruction to the trial court.  It did not do so and the reason is abundantly clear from reading the Federal Circuit's decision – nothing more remains to be decided.  Plaintiffs' dissatisfaction with the outcome of the appeal process does not change this fact.

In sum, it is beyond dispute that the Federal Circuit Ruling was comprehensive and put to rest plaintiffs' 20-year pursuit for compensation under alternative legal theories.  For this reason, plaintiffs cannot now raise new, abandoned, or rejected legal theories.  The Federal Circuit Ruling is clear, it addressed and resolved all of plaintiffs' claims, albeit not to plaintiffs' satisfaction, and plaintiffs' disagreement with the Federal Circuit does not provide new grounds

---

[2]  After the trial court rendered numerous decisions in this case, not once did plaintiffs seek, pursuant to RCFC 52 or 59, to amend or modify any findings of fact, conclusions of law, or the judgment entered.

to resurrect plaintiffs' complaint. Consequently, there are no claims left to be adjudicated by this court; this litigation is at its end.

## 2. The Relief Plaintiffs Seek Is Barred by Res Judicata

Any claim supposedly unresolved during the nearly two decades of litigation is barred by res judicata. Under the doctrine of res judicata, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). The purpose of res judicata is "an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled between the parties." Baldwin v. Traveling Men's Ass'n, 283 U.S. 522, 525 (1931). "Over the years, the doctrine has come to incorporate common law concepts of merger and bar, and will thus also bar a second suit raising claims based on the same set of transactional facts." Jet Inc. v. Sewage Aeration Sys., 223 F.3d 1360, 1362 (Fed. Cir. 2000) (citing Migra v. Warren City School Dist. Bd. Of Educ., 465 U.S. 75, 77 n.1 (1984) ("Claim preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar.")). Therefore, in order to dismiss a case under res judicata, it must be established "that (1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." Ammex, Inc. v. United States, 334 F.3d 1052, 1055 (Fed. Cir. 2003).

Here, each element of res judicata has been satisfied. First, it is beyond dispute that the parties (Hages and government) are identical. Turning to the second element, this too is satisfied because the trial court rendered a final decision on the merits and the Clerk of Court entered final judgment. Third, the issues now raised are the precise issues previously decided by the trial court (and reviewed by the appellate court), which arise from the same underlying transactional facts.

The thrust of plaintiffs' argument is that not all issues were specifically resolved by the trial court or on appeal by the Federal Circuit. Plaintiffs are mistaken. Indeed, plaintiffs filed a cross-appeal to the Federal Circuit they cannot now complain. Moreover, there is a presumption that claims arising from the same factual pattern will constitute the same claim for res judicata purposes. Plaintiffs seriously cannot argue that the issues and facts they now raise are not identical to those set forth in the complaint filed over 20 years ago and which was litigated to conclusion, as demonstrated by eight separate comprehensive opinions issued by the trial judge assigned to this case. Unquestionably, the trial court ruled on the entire breadth of the complaint, and resolved all the factual and legal issues by accepting some legal theories argued by plaintiffs and rejecting others. Hence, res judicata prevents the court from hearing the same matter for a second time.

## III.  CONCLUSION

For the foregoing reasons, the court **DENIES** plaintiffs' motion for hearing. Additionally, plaintiffs request an expedited briefing schedule and the appointment of a special master. The court **DENIES AS MOOT** the motion for expedited briefing. The court further **DENIES** plaintiffs' motion for the appointment of the former trial judge in this case to serve as a

special master. The court has no authority grant such a request.  The Clerk is directed to enter judgment accordingly and to close the case.  No costs.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge
