NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**ESTATE OF E. WAYNE HAGE AND ESTATE OF JEAN N. HAGE,**

*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

———————————

2016-1330

———————————

Appeal from the United States Court of Federal Claims in No. 1:91-cv-01470-MMS, Judge Margaret M. Sweeney.

———————————

Decided: April 20, 2017

———————————

MARK LEE POLLOT, Eagle, ID, argued for plaintiffs-appellants.

ELIZABETH ANN PETERSON, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JOHN C. CRUDEN.

———————————

Before DYK, MAYER, and REYNA, *Circuit Judges.*

PER CURIAM.

The estate of E. Wayne Hage and the estate of Jean N. Hage (collectively "the Hages") appeal a final order of the United States Court of Federal Claims dismissing their complaint.  *See Estate of Hage v. United States*, 113 Fed. Cl. 277, 279 (2013) ("*Hage IV*").  For the reasons discussed below, we affirm.

## DISCUSSION

The relevant facts related to this dispute, which has been the subject of  litigation since 1991, have been set out in exhaustive detail in multiple opinions from the Court of Federal Claims, *see, e.g.*, *Hage IV*, 113 Fed. Cl. at 279–80; *Estate of Hage v. United States*, 82 Fed. Cl. 202, 204–08 (2008) ("*Hage II*"); *Hage v. United States*, 51 Fed. Cl. 570, 572–74 (2002) ("*Hage I*"), and in a previous opinion from this court, *see Estate of Hage v. United States*, 687 F.3d 1281, 1283–85 (Fed. Cir. 2012) ("*Hage III*").  In their current appeal, the Hages argue that *Hage I* and *Hage II* left unresolved certain issues related to their entitlement to compensation from the United States for a purported Fifth Amendment taking of their water rights.  Specifically, the Hages contend that the Court of Federal Claims made a "finding" that a physical taking occurred when the government, using intimidation and threats of prosecution, prevented them from maintaining ditches on federal property, and that this finding was "undisturbed" by this court's judgment in *Hage III*.  The Hages further assert that the Court of Federal Claims, following this court's remand, "should have recalculated and awarded [them] the amount of compensation" they are due as a result of this alleged physical taking by the United States.

We find this argument unpersuasive for a number of reasons.  First, nothing in *Hage III* even arguably suggested that the Hages were entitled, on remand, to liti-

gate the issue of whether the government could be held liable for a physical taking of their water rights. *See Hage III*, 687 F.3d at 1286–92. Our remand order was clear and precise. We vacated the portion of the trial court's judgment awarding compensation for the alleged regulatory taking of the Hages' right to access and maintain stream channels and ditch rights of way established pursuant to the Act of July 26, 1866, 43 U.S.C. § 661 (the "1866 Act"). *See Hage III*, 687 F.3d at 1287–88. We determined, moreover, that the trial court erred in holding that the government's erection of fences around water sources on federal lands constituted a compensable taking. *See id.* at 1289–90. In addition, we held that the Hages' claim for range improvements, under 43 U.S.C. § 1752(g), was not ripe because they had failed to exhaust their administrative remedies. *See Hage III*, 687 F.3d at 1290–91.

Although we remanded the case to the Court of Federal Claims "for further proceedings consistent with [our] opinion," *id.* at 1292, nothing in our opinion or remand order suggested that the trial court should conduct further proceedings on the question of whether the government could be held liable for a physical taking of the Hages' right to access and maintain the 1866 Act ditches. *See Hage IV*, 113 Fed. Cl. at 282 ("[I]f the Federal Circuit intended that this court open the record, receive additional evidence, and render new or additional findings of fact and conclusions of law, then the appellate court would have provided that clear instruction to the trial court. It did not do so and the reason is abundantly clear from reading the Federal Circuit's decision—nothing more remains to be decided."). Our mandate reversing and vacating the judgment of the Court of Federal Claims fully and finally resolved all issues presented on appeal, leaving no room for further proceedings on remand related to a purported physical taking of the Hages' right to access the 1866 Act ditches. *See TecSec, Inc. v. Int'l Bus.*

*Machs. Corp.*, 731 F.3d 1336, 1341–42 (Fed. Cir. 2013) ("After our mandate issues, the mandate rule forecloses reconsideration of issues implicitly or explicitly decided on appeal." (citation and internal quotation marks omitted)); *see also Retractable Techs., Inc. v. Becton Dickinson & Co.*, 757 F.3d 1366, 1371 (Fed. Cir. 2014) ("While the [trial] court was certainly free to take action consistent with the mandate, that does not mean that it was likewise free to disturb matters that were within the mandate." (citation omitted)).

Second, the Hages' contention that they were entitled, on remand, to litigate the question of the government's liability for a physical taking of their water rights is premised on a fundamental misapprehension regarding the nature of the appellate process. Contrary to the Hages' assertions, our mandate reversing and vacating the trial court's damages award did not leave "undisturbed" any of the court's findings related to that award. As an appellate court, we "review[] judgments, not statements in opinions." *Black v. Cutter Labs.*, 351 U.S. 292, 297 (1956); *see also Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540 (Fed. Cir. 1983). When it appealed to this court after the Court of Federal Claims entered final judgment on the Hages' claims, the government appealed that judgment in its entirety. *See* Brief for Defendant-Appellant, *Hage III*, 687 F.3d 1281 (Nos. 2011-5001, 2011-5013), 2011 WL 860406, at *26 ("The [Court of Federal Claims'] award of compensation must be reversed in its entirety."). The fact that we did not, in *Hage III*, specifically address each purported finding made by the Court of Federal Claims does not mean that any such finding "survived" our judgment reversing and vacating the court's damages award. *See Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc.*, 856 F.2d 173, 176 (Fed. Cir. 1988) ("Although we review findings in connection with our review of judgments, we do not review findings independently."); *see also Jennings v. Stephens*, – U.S. –, 135

S. Ct. 793, 799 (2015) ("Courts reduce their opinions and verdicts to judgments precisely to define the rights and liabilities of the parties. . . . This Court, like all federal appellate courts, does not review lower courts' opinions, but their *judgments*."). As we have previously made clear, "[u]nless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication." *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999).

Third, the Court of Federal Claims, in *Hage II*, concluded that it was appropriate to analyze the Hages' claim for compensation based on the alleged denial of access to the 1866 Act ditches using a regulatory, rather than a physical, taking rubric. 82 Fed. Cl. at 208, 210–14. According to the Hages, "the trial court identified one regulatory taking of waters not flowing through ditches in the upper reaches of the Hages' grazing lands affecting primarily the Mosquito Creek area . . . and two classes of physical taking, one being a physical taking of stock water sources by the erection of actual physical barriers in the form of fences and the other being a physical taking of waters in ditches in the nature of a practical physical ouster by means of intimidation, threats, harassment and actual prosecution." Supplemental Brief of Plaintiffs-Appellants at 5. Even accepting *arguendo* that the trial court "identified" a physical taking of water in the 1866 Act ditches based on the government's alleged harassment and threats of prosecution, *see Hage II*, 82 Fed. Cl. at 208; *Hage I*, 51 Fed. Cl. at 580 n.13, however, the court ultimately elected to analyze the Hages' claim seeking compensation for the alleged denial of access to the ditches as a regulatory, rather than a physical, taking claim. *See Hage II*, 82 Fed. Cl. at 208, 210–14.

The trial court indicated that it had previously held "that the Government's actions which physically prevented [the Hages] from accessing their 1866 Act ditches

amounted to a physical taking," *id.* at 208, because the Hages argued that "the government ha[d] physically barred them from the land, with threat of prosecution for trespassing if they enter[ed] federal lands to maintain their ditches," *Hage I*, 51 Fed. Cl. at 580 n.13. Recognizing, however, that "there is no bright line between physical and regulatory takings," *Hage II*, 82 Fed. Cl. at 208, the court determined that it was appropriate to analyze the Hages' claim for compensation based on the alleged denial of access to the 1866 Act ditches as a regulatory, rather than a physical, taking claim, *id.* at 208, 210–14; *see also Yee v. City of Escondido*, 503 U.S. 519, 534–35 (1992) (explaining that a regulatory taking theory and a physical taking theory can be understood as two arguments in support of the same claim).

The trial court concluded that the Hages were entitled to compensation because if the government had "not prevented their access to their various 1866 Act ditches, the water could have been put to use for agricultural purposes or could have been sold for quasi-municipal use." *Hage II*, 82 Fed. Cl. at 212. The court determined that the government had interfered with the Hages' right to access the 1866 Act ditches, both by requiring special use permits for the use of heavy equipment to clear obstructions from the ditches and by threatening to prosecute the Hages for trespass if they entered federal lands to maintain the ditches. *Id.* at 210–14. The Court of Federal Claims unequivocally concluded that the conduct that the Hages now assert was a physical taking—the government's alleged harassment and threats of prosecution for trespassing—should be analyzed as part of the purported regulatory taking for which the court awarded compensation. *See id.* at 208, 212–13 (applying the multi-factor regulatory takings standard set out in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 123–36 (1978), in analyzing the government actions which allegedly prevented the Hages from maintaining the 1866

Act ditches); *see also Tuthill Ranch, Inc. v. United States*, 381 F.3d 1132, 1136 (Fed. Cir. 2004) ("The *Penn Central* factors critical to determining which regulatory actions constitute regulatory takings are simply inapplicable when analyzing a physical taking."). In *Hage III* we vacated the regulatory taking determination, finding the claim not ripe. 687 F.3d at 1287. Contrary to the Hages' assertions, nothing in *Hage II* or *Hage III* suggests that they are entitled to further proceedings on the question of whether the government's alleged harassment and threats of prosecution are sufficient to support a viable physical taking claim. *See Hage IV*, 113 Fed. Cl. at 282 ("[I]f the trial court intended to conduct more proceedings to resolve an outstanding legal issue, it would have said so in its . . . decision. The prior judge assigned to this case labored diligently and provided numerous detailed decisions that explored every theory of liability raised in the complaint. Rather than suggest that future hearings might be necessary . . . the trial court directed the Clerk of Court to enter final judgment[] and to close the case." (alteration in original) (citation and internal quotation marks omitted)).

Finally, we find no merit in the Hages' contention that this court was not, in the previous appeal, "given the opportunity to consider the trial court's holding that a taking of waters in [the 1866 Act] ditches by a practical physical ouster had occurred." Supplemental Brief of Plaintiffs-Appellants at 5. In the previous appeal, the Hages' counsel specifically stated at oral argument that their claim for compensation based upon water flowing through the 1866 Act ditches should be analyzed as a physical taking claim. *See* Oral Arg. Tr. at 18:25–56, 20:20–21:09, *Hage III*, 687 F.3d 1281, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?/fl=20 11-5001.mp3. We reject, therefore, the Hages' argument that this court, in the previous appeal, was not aware of their claim that the government's threat to prosecute

them for trespass if they entered federal lands to maintain the 1866 Act ditches could be construed as a compensable physical taking. *See Lowder v. Dep't of Homeland Sec.*, 504 F.3d 1378, 1383 (Fed. Cir. 2007) ("The failure to discuss particular contentions in a case, however, does not mean that the tribunal did not consider them in reaching its decision."); *Hartman v. Nicholson*, 483 F.3d 1311, 1315 (Fed. Cir. 2007) ("That the court did not specifically mention [an argument] in its opinion forms no basis for an assumption that it did not consider [it]." (citation and internal quotation marks omitted)).

We emphasize, moreover, that the Hages' claim for a purported physical taking of their right to access the 1866 Act ditches is foreclosed by the determinations we made in *Hage III*. The Hages contend that the Forest Service effected a "practical physical ouster" when it threatened to prosecute them for trespass if they entered federals lands with heavy equipment to maintain the 1866 Act ditches. *See* Supplemental Brief of Plaintiffs-Appellants at 8. As we held in *Hage III*, however, the Forest Service had the right to require that those seeking to conduct ditch maintenance using heavy equipment obtain special use permits. 687 F.3d at 1287–88. We further determined that there was no credible "evidence suggesting that the disputes between the Forest Service and the Hages would cause the Forest Service to deny the Hages special use permits to perform ditch maintenance." *Id.* at 1288.

Given that there was no showing that the Hages could not have secured the requisite special use permits, the government's threat to prosecute them for trespass if they entered federal property without first obtaining such permits could not possibly give rise to a viable "practical physical ouster" claim. "[T]he sole question governing physical takings is whether or not the government has physically occupied the plaintiff's property." *Tuthill Ranch*, 381 F.3d at 1136; *see Yee*, 503 U.S. at 527 ("The

government effects a physical taking only where it *requires* the landowner to submit to the *physical occupation* of his land." (second emphasis added)). Where, as here, the government merely restricts the use of an individual's property—instead of occupying that property—that individual has not suffered a physical taking. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 432 (1982) (emphasizing that the issue of whether there has been an actual physical occupation is the critical inquiry in assessing whether a physical taking has occurred); *Tuthill Ranch*, 381 F.3d at 1137 (explaining that "[p]hysical invasions short of an occupation and regulations that merely restrict the use of property may qualify as regulatory takings, but not as physical takings"); *see also United States v. Locke*, 471 U.S. 84, 104 (1985) (emphasizing that "[a]lthough owners of unpatented mining claims hold fully recognized possessory interests in their claims," the government "maintains broad powers over the terms and conditions upon which the public lands can be used, leased, and acquired").

CONCLUSION

Accordingly, the final order of the United States Court of Federal Claims dismissing the Hages' complaint is affirmed.

**AFFIRMED**